FILED
MISSOULA, MT

2005 NOV 7 PM 3 47

PATRICK E. DUFFY
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-31-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | OPINION |
| | ) | |
| JACK SWEARINGEN, | ) | |
| | ) | |
| Defendant. | ) | |

## I.  Introduction

In this case, the question presented is whether a state
parolee's Fourth Amendment rights are violated when state and
federal officers perform a warrantless search and seizure of his
computer.  While there is little question that warrantless
searches of parolees and probationers are authorized, law
enforcement officers do not have *carte blanche* authority to
conduct warrantless searches and seizures of a personal computer
they have examined in a parolee's home.  Seizing a computer
without a warrant and then searching it without a warrant,

-1-

#33

violates the Fourth Amendment even if the defendant is a state parolee or probationer.

## II.  **Facts**

In February 2005, Immigration and Customs Enforcement Agents (ICE) discovered evidence suggesting that Jack Swearingen, a convicted sex offender on a Montana State suspended sentence, had subscribed to a child pornography website two years earlier.[1]  In the course of an investigation the agents obtained Swearingen's credit card number, his e-mail address, and his home address through the child pornography website.

The federal law enforcement agents[2] then performed a criminal records search, and discovered that Swearingen had been convicted in Montana State Court in 1992 for sex crimes involving children.  They determined that a condition of his sentence, set forth in the 1992 State Court Judgment, provided that Swearingen must, at any time, submit to reasonable, warrantless searches of his residence by his probation officer.  The State Court Judgment provides:

> 4.  That the Defendant shall submit <u>himself, his vehicle and his residence to search</u> at any time by lawful authorities upon reasonable request of his

---

[1]The website in question is located at www.undergroundlolitastudios.com.

[2]The agents testified they work for Homeland Security.  No one explained the connection between Homeland Security and Child Pornography.

-2-

Probation Officer.   (Emphasis added)

Notably, nothing in the State Court Judgment authorized warrantless seizures of Swearingen's personal property, nor did it authorize a search of his computer.

The federal agents were advised upon revelation of this information to higher federal authorities that from the Justice Department's perspective, the information they had was "stale" and could not be used to establish probable cause for a search of Swearingen's home.

Given the gravity of the federal investigation, the agents then contacted the Montana State Probation Officer David Sonju through the Missoula County Montana Probation Office.  Sonju was not Swearingen's probation officer.  Sonju was contacted because Swearingen's regular probation officer was on vacation.  When the agents described their findings to Sonju and his supervisor, the state officers agreed to conduct a warrantless search pursuant to the State Court Judgment.

Sonju and the agents went to Swearingen's Missoula home on March 23, 2005.  Swearingen was initially advised by the state probation officer about the purpose of the visit.  He was told the search was being conducted pursuant to the State Court Judgment.  The federal officers had him sign a Miranda waiver after which Sonju and the ICE agents questioned him concerning the contents of his computer.  As a part of the discussion,

-3-

Swearingen acknowledged that there was adult pornography on his computer.  However, he stated that his sex offender therapist had authorized him to have adult pornography as a part of his treatment plan.  Sonju sought to verify this somewhat incredulous proposition by contacting Swearingen's sex therapist.  Indeed, she reported, as a part of his treatment, Swearingen was authorized to have adult pornography.  During this discussion, Swearingen denied storing any child pornography on his two computers.

The federal and state agents remained skeptical, having viewed suspicious photographs on the computers.  At the hearing on the Motion to Suppress, the agents admitted that they did not see any pornography that could easily or clearly be identified as child pornography.  They did see Oriental girls which made them suspicious because, in their view, the physiological characteristics of young Oriental women are often difficult to distinguish from underage females.

Because of their suspicions, the federal agents ran a computer program in Swearingen's house designed to ferret out child pornography.  The results of running the program did not support their suspicion that they would find child pornography was stored on Swearingen's computer.

Without authorization by a court, and without seeking a warrant to search the computer or computers, the state and

federal officers seized Swearingen's computers.  Off site, they searched them and ultimately found child pornography on them. The seizure and search were made without a warrant and exceeded the plain language of the state judgment search condition which required Swearingen to "submit himself, his vehicle and his residence to search...".

There is no question that the state officer had the authority to conduct a warrantless search of Swearingen's home. Given the state of the law as it relates to the Fourth Amendment for persons on probation, supervised release, or parole, the initial examination of Swearingen's computer arguably did not violate the Fourth Amendment.  However, seizing the computers and then searching them without a warrant under the facts and circumstances of this case was a violation of the Fourth Amendment.

III. **Analysis**

The analysis in this case begins by rejecting any suggestion that swearingen has no Fourth Amendment rights because he is on state parole.  <u>Latta v. Fitzharris</u>, 521 F.2d 246, 248 (9th Cir. 1975).  "The Fourth Amendment by its explicit terms applies to all persons, regardless of their status under the law." <u>Moreno v. Bacca</u>, 400 F.3d 1152, 1157 (9th Cir. 2005).  The question is to what extent the Fourth Amendment limits the government's ability to search supervised releasees who are subject to

conditional liberty by virtue of a state criminal judgment.  When the purpose of the search is to detect evidence of ordinary criminal wrongdoing, the "special needs" exception to warrantless searches is significantly mitigated.  <u>Id.</u> At 1157 n.3.

Probationers have a reduced expectation of privacy and liberty.  In most circumstances, a warrantless search based upon reasonable suspicion the releasee is acting in violation of a state imposed judgment does not violate a probationer's Fourth Amendment rights.  To some extent, this rule applies to suspicion of criminal conduct.  In <u>United States v. Knights</u>, the United States Supreme Court held that a police officer could legally search a probationer's residence without a warrant when the officer had a reasonable suspicion that the probationer was involved in criminal conduct.  534 U.S. 112, 121 (2001).  In <u>Knights</u>, the Court held that its "special needs" requirement for a warrantless search of a probationer's home, based upon <u>Griffin v. Wisconsin</u>, no longer applied.  534 U.S. at 117.  The <u>Knights</u> Court reasoned that the government's interest in protecting citizens from people with a higher predilection for criminal activity, warranted the otherwise illegal intrusion into a probationer's privacy.  <u>Id.</u> at 119-120.  Moreover, absent limited exceptions with "special needs" the Court stated it would not examine the "'actual motivations of individual officers.'" *Id.* at 122 (citing <u>Whren v. United States</u>, 517 U.S. 806 (1996)).

-6-

Here, the application of Knights supports the proposition
that pursuant to the State Court Judgment, the state probation
officer, accompanied by the federal agents, had authority to
search Swearingen's home.  The facts known to law enforcement,
including Swearingen's use of a credit card at a child
pornography web site and the fact that Swearingen produced the
identical credit card when the officers were at his home,
justified not only a search of Swearingen's home but the initial
search of his computer without a warrant.

By analogy, a warrantless search of a probationer's vehicle
for purposes of a criminal investigation, and not strictly for
probationary purposes was upheld.  United States v. Stokes, 292
F.3d 964, 967 (9th Cir. 2002).  Recently, the Court distinguished
the status of a pretrial defendant from a probationer but noted
in the course of its opinion that a warrantless search of a
probationer's apartment was reasonable under the Fourth Amendment
"where it was authorized by a condition of his probation and
supported by reasonable suspicion."  United States v. Scott, 424
F.3d 888, 904 (9th Cir. 2005)(citing Knights, supra at 122).  The
Circuit has also previously noted the appropriateness of
referring to state "guidance about the controlling federal
issues."  United States v. Conway, 122 F.3d 841, 843 (9th Cir.
1997) (Wallace concurring), cert denied, 522 U.S. 1065 (1998).

Before Knights the Montana Supreme Court relied on Griffin

-7-

in allowing a warrantless search of a vehicle or home of a
probationer.  See, Montana v. Burke, 235 Mont. 165, 169-70, 766
P.2d 254, 256-57 (1988).  In Burke the Montana Supreme Court
reasoned that the special needs of the probationary system
satisfied the requirements set forth in Griffin.  Id.  Important
to the Montana Court was the need for law enforcement officials
to act on their observations free of specific direction from a
probation officer.  Id.

Under either state or federal law, Swearingen's challenge to
the search of his house is not sound.  Thus, the first two steps
taken by the state probation officer and the federal agents are
justified under existing case law.  That is, the warrantless
search was authorized at Swearingen's home.  By similar
reasoning, the initial warrantless search of his computer was
justified.  He was a state sex offender subject to reduced
liberty interest in his home and in his activities by direction
of the state judgment and by sufficient facts to establish
reasonable suspicion.

It was the final step taken by the agents, seizing his
computer for a more protracted search, that is not authorized
either by the State Court Judgment as it contained no authority
to seize, or by the mitigated liberty protections of the Fourth
Amendment.  In the absence of a warrant, the agent usurped the
role of the court in determining probable cause to seize and then

-8-

conduct the second search of the computers.

Under Fourth Amendment jurisprudence, whether a search has occurred depends upon whether a reasonable expectation of privacy has been violated.  See, Katz v. United States, 389 U.S. 347, 361 (1967)(Harlan J., concurring).  Fourth Amendment reasonableness means that a seizure or search must be supported by probable cause, with some exceptions.  When probable cause would normally be required, "special needs" can justify searches based on less.  When reasonable suspicion would normally be required, special needs may justify suspicionless searches.  See, United States v. Scott, supra at 893.  But, these propositions are not without limit.  The law justified the steps taken by the agents to conduct the initial examination of the computer and it probably justifies the use of the special computer program at Swearingen's place to search the computer itself.  But, when the search was largely fruitless, any further seizure or search should have been authorized by a judge under conventional Fourth Amendment jurisprudence.

Here, the search was not reasonable under a general "totality of the circumstances" approach.  The resolution of this issue involves balancing the degree to which the seizure and subsequent search intruded on Swearingen's mitigated privacy versus the degree to which it was needed for the promotion of legitimate government interest.  On the privacy side, Swearingen

-9-

had a sharply reduced liberty and privacy interest.  His status as a parolee was a part of his criminal punishment so he did not enjoy the absolute liberty to which every other citizen is entitled.  The Judgment authorizing searches without a warrant or "reasonable cause" further reduced Swearingen's reasonable expectation of privacy.

Here, the application of these legal holdings leads to the conclusion that up to the point of seizing the computer and then searching it again without a warrant, the agents acted within the four corners of the law.  But, once the agents took matters into their own hands by seizing the computers after an initial fruitless search, and then conducting further searches with more sophisticated software, they went beyond the pale.  To hold otherwise would mean that a person in Swearingen's position would have no Fourth Amendment interest in his personal property.  The agents were ostensibly looking for violations of Swearingen's parolee status.  When their investigation shifted from compliance violations to the collection of evidence for criminal law enforcement purposes they had no authority to seize and search his computer without first applying for a search and seizure warrant from a judge.

**IV.   Conclusion**

The initial search of Swearingen's home, and the initial search of his computer did not violate Swearingen's limited

expectation of privacy and liberty, and were justified as serving a legitimate government interest in supervising parolees and enforcing child pornography laws.  Once all of the warrantless exceptions had been exhausted, the officers should have presented all of the facts to a judge and sought a warrant to continue the search of Swearingen's computers by seizing and applying more sophisticated investigatory software tools.

For these reasons, the Defendant's Motion to Suppress is GRANTED.

Dated this 7th day of November, 2005.

DONALD W. MOLLOY, CHIEF JUDGE
UNITED STATES DISTRICT COURT

## Other Orders/Judgments
<u>9:05-cr-00031-DWM USA v. Swearingen</u> **CASE CLOSED on 09/30/2005**

**U.S. District Court**

**District of Montana LIVE**

Notice of Electronic Filing

The following transaction was received from SLP, entered on 11/7/2005 at 2:51 PM MST and filed on 11/7/2005

| | |
|---|---|
| **Case Name:** | USA v. Swearingen |
| **Case Number:** | <u>9:05-cr-31</u> |
| **Filer:** | |
| **Document Number:** | <u>33</u> |

**Docket Text:**
Opinion as to Jack Swearingen re [13] Motion to Suppress filed by Jack Swearingen, . Signed by Judge Donald W. Molloy on 11/7/2005. (SLP, )

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105468959 [Date=11/7/2005] [FileNumber=136-0] [0
39dd30349e2e150700061d640da0b67114f1b19f735dd2735e4eb01566ccf9c05a8899
992234c941e44bd516ab73f8e1579441a999bb8cee973b2757da9c657]]

**9:05-cr-31-1 Notice will be electronically mailed to:**

**9:05-cr-31-1 Notice will be delivered by other means to:**

Marcia Hurd
U.S. ATTORNEYS OFFICE
P.O. Box 1478
Billings, MT 59103-1478

Morgan M. Modine
MODINE LAW OFFICE
215 W Broadway
Missoula, MT 59802